IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| EIGHT ONE TWO, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 3:13-cv-02981-K |
| | ) | |
| v. | ) | |
| | ) | |
| PURDUE PHARMA L.P. AND | ) | |
| PURDUE PHARMACEUTICALS L.P., | ) | |
| | ) | |
| *Defendants*. | ) | |

TO THE HONORABLE UNITED STATES DISTRICT COURT:

**DEFENDANTS' MOTION UNDER 28 U.S.C. § 1404(a)
FOR CHANGE OF VENUE AND MEMORANDUM IN SUPPORT**

Defendants Purdue Pharma L.P. and Purdue Pharmaceuticals L.P. respectfully move the Court to transfer this action under the provisions of 28 U.S.C. § 1404(a) to the United States District Court for the District of Connecticut. In support of the motion, Defendants respectfully show the Court as follows:

**I.     SUMMARY OF THE ARGUMENT**

Defendants Purdue Pharma L.P. ("Purdue Pharma") and Purdue Pharmaceuticals L.P. ("Purdue Pharmaceuticals") (collectively, "Purdue") move for the convenience of the parties and witnesses, in the interest of justice, for a change of venue under 28 U.S.C. § 1404(a) to the District of Connecticut. This is a patent infringement action under 35 U.S.C. § 271(a), (b), and (c). Plaintiff is the alleged owner of U.S. Patent No. 6,697,812 (the "'812 patent"), which is directed to a method and system for inventory tracking. Plaintiff accuses Purdue of directly and indirectly infringing by designing and using an

allegedly infringing inventory method and system in Purdue's commercialization of pharmaceutical products.

Transfer of this suit is proper because this action could have originally been brought in the District of Connecticut. Purdue's principal place of business is in Connecticut, where much of the work involved in developing Purdue's inventory management system was undertaken.

Furthermore, all of the private factors and the balance of the public factors in a Section 1404(a) analysis strongly favor transfer to the District of Connecticut. Defendant Purdue Pharma is a pharmaceutical company headquartered in Connecticut. Purdue Pharmaceuticals has a manufacturing facility in Wilson, North Carolina, where its inventory management system operates. Purdue's only nexus with the Northern District of Texas is that it sells pharmaceutical products here. Merely selling goods in a district is never sufficient to prevent the transfer of a lawsuit to a more convenient venue.

Most of Purdue's relevant witnesses, documents, and things are in Connecticut, as Purdue's Manager who headed its inventory management project is in Connecticut. Other witnesses, documents, and things are in New Jersey and North Carolina. Purdue will likely call many witnesses in this case such as, for example, its information personnel, its security personnel, its engineering personnel, its marketing personnel, and its packaging personnel. None of these individuals are located in Texas or within 100 miles of the Northern District of Texas courthouse. Rather, most either reside or work in or near or conduct business at Purdue's facilities in Connecticut, New Jersey, or North Carolina. Dallas, Texas is over 1500 miles from Stamford, Connecticut, is over 1300 miles further from Totawa, New Jersey than from Stamford, Connecticut, and is over 600

miles further from Wilson, North Carolina than from Stamford, Connecticut. It would be unduly burdensome for Purdue to send witnesses to Texas, to pay for their travel and lodging in Texas, and to have them spend significant amounts of time away from their places of business to conduct this case in the Northern District of Texas.

Purdue also intends to take discovery of, or to implead, several third parties who assisted with the design and implementation of Purdue's inventory system such as, for example, Purdue's third party equipment vendor, software vendor, and engineering consultants. None of these third parties are Texas companies, each contracted in Connecticut to perform services for Purdue, and none of their activities took place in Texas. Therefore, it is unlikely that they are subject to the subpoena power of the Northern District of Texas. However, all appear to be subject to the subpoena power of the District of Connecticut.

Plaintiff has already informally requested volumes of documents from Purdue. This request is indicative of the types of documents that Plaintiff will seek once discovery is commenced. None of these documents reside in Texas. Rather, most are in Connecticut and New Jersey, and some are in North Carolina.

On the other hand, plaintiff Eight One Two LLC is a Texas company that was formed on February 2, 2012, solely for the purpose of enforcing the '812 patent. The company is even named after the patent itself. The '812 patent issued on February 24, 2004, but was assigned to Plaintiff on April 20, 2012. Plaintiff's alleged "principal place of business," 1 Paigebrooke Lane, Westlake, Texas 76262, is the office of its general lawyers, Bradley & Bradley PC. Clearly, Plaintiff conducts no real business, and has no real place of business, in the Northern District of Texas. It is likely that Plaintiff will

have only one fact witness, the alleged inventor of the '812 patent. He allegedly resides in this district. However, Plaintiff will undoubtedly seek discovery from numerous Purdue employees, none of whom are in the Northern District of Texas.

The interests of justice require transfer of this suit to the District of Connecticut at least for the convenience of the witnesses.

## II.  FACTUAL BACKGROUND

### A.  The Parties

Plaintiff Eight One Two LLC ("Eight One Two") is a recently-formed Texas company whose sole purpose is the enforcement of it sole asset, the '812 patent. Declaration of Joseph R. Robinson attached as Exhibit 1, ¶ 3 ("Robinson Dec., ¶_"). It was even named after the patent-in-suit. Plaintiff has no real place of business. Its alleged principal place of business in Westlake, Texas, is the office of its general attorneys, Bradley and Bradley PC. Complaint, ¶ 1; Robinson Dec., ¶ 4.

Purdue Pharma L.P. ("Purdue Pharma") is a Delaware limited partnership headquartered in Stamford, Connecticut, which is about 1588 miles from Dallas, Texas. Robinson Dec., ¶¶ 5, 9. Purdue Pharma one of a family of associated businesses that researches, develops, and commercializes pharmaceutical and biological products throughout the world. Robinson Dec., ¶5.

Purdue Pharmaceuticals L.P. ("Purdue Pharmaceuticals") is a Delaware limited partnership that is another member of this family of associated pharmaceutical businesses. Robinson Dec., ¶ 6. It manufactures pharmaceutical products in Wilson, North Carolina, which is about 1220 miles from Dallas, Texas, but is only about 535 miles from Stamford, Connecticut. Robinson Dec., ¶¶ 6, 9.

### B. The '812 Patent

U.S. Patent No. 6,697,812 is entitled "Method and System for Eliminating Error when Packing or Packaging Sets of Serialized Products or Otherwise Identifiable Objects." Complaint ¶ 1, Exh. A. It issued on February 24, 2004, from U.S. patent application no. 09/484, 504, filed on January 18, 2000. *Id.* It has only one named inventor. The '812 patent claims methods and systems for grouping objects having unique identifiers (*i.e.*, radio frequency identification ("RFID") labels), reading and recording all of those RFID labels at one time to avoid counting the items, sending those RFIDs to a database, and generating a set identifier from those RFIDs. *Id.*

### C. Procedural History

Plaintiff filed its complaint on July 31, 2013, but did not serve it. Robinson Dec., ¶ 10. Rather, Plaintiff asked Purdue to discuss a potential resolution to this suit prior to service. *Id.* Purdue agreed, and the parties first met prior to the expiration of the 120-day service deadline. *Id.* The parties were unable reach a resolution. *Id.*

The parties then agreed to a second meeting but could not meet until after the 120-day service deadline. Robinson Dec., ¶ 11. Therefore, in order to avoid dismissal of the complaint, Plaintiff requested Purdue to execute a Notice and Acknowledgement of Service and to respond to the complaint by December 23, 2013. Robinson Dec., ¶ 12. Purdue agreed with the expectation that this matter would be amicably resolved before then. *Id.*

The parties then met on December 9, 2013, again to attempt to resolve this matter. Robinson Dec., ¶ 13. No resolution was reached, but Plaintiff was to consider the exculpatory information that Purdue presented at that meeting and to inform Purdue of

any next steps to resolve the matter. *Id.* Purdue followed-up with Plaintiff before the December 23rd deadline, but Plaintiff did not supply any further substantive feedback before the new deadline. Robinson Dec., ¶ 14. Therefore, on December 20, 2013, Purdue asked Plaintiff to consent to a 30-day extension of time to respond to the complaint. Robinson Dec., ¶ 15, Exh. A. Plaintiff refused. Robinson Dec., ¶ 15, Exh. B. Purdue then moved for an extension until January 22, 2014, which the Court granted. Robinson Dec., ¶ 15.

Subsequent to the grant of the extension of time to respond, Plaintiff informally asked Purdue to produce numerous highly confidential documents concerning Purdue's exculpatory information, allegedly to help Plaintiff resolve this matter. Robinson Dec., ¶ 16, Exh. C. Particularly, Plaintiff wrote:

> Following-up on our settlement discussions, as you might expect, we would like to substantiate the representations you made during our meeting regarding how Purdue's packaging and tracking processes work.
>
> We want to review any documentation Purdue believes shows that its systems do not infringe Mr. Martin's patent. Please let us know if Purdue is willing to share the documentation with our team so that we may evaluate its non-infringement position. To that end, we believe the following types of documents would be helpful in such a review:
>
> • system architecture document
>
> • information architecture document
>
> • requirements documents created to define the operational characteristics of the processes
>
> • operating manuals created to describe how the process works and train employees in the use of the processes
>
> • maintenance manuals created to describe how to correct problems with the processes and/or insure that the processes continue to operate trouble free

- quality control documents created to describe the operation of the processes and insure that quality goals are achieved (e.g., ISO 9001 documentation)

- regulatory compliance documentation that describes how the processes comply with state and federal laws and regulations regarding proper tracking

➢ For each of the above, the documents should cover the processes as used in both the optical and the RFID solutions

Obviously, if there are other documents Purdue believes evidence that Purdue does not infringe the '812 patent, please provide copies of those as well so we can evaluate Purdue's non-infringement position further.

*Id.* (emphasis in original).

None of these requested documents reside within the Northern District of Texas. Rather, most are in Connecticut, while some are in North Carolina. Declaration of Harry Ramsey, ¶ 6 ("Ramsey Dec., ¶ __")

### III.     LEGAL STANDARDS

#### A.     Transfer Is Proper when Another Venue Is Clearly More Convenient

Although this action arises under the patent laws of the United States and the Court of Appeals for the Federal Circuit has appellate jurisdiction over all patent matters, the law of the United States Court of Appeals for Fifth Circuit governs this motion. *In re Hoffman-LaRoche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Section 1404(a), Title 28 U.S.C. provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …." 28 U.S.C. § 1404(a). "A motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) citing *In re Genentech, Inc.,* 566 F.3d 1338,

1342 (Fed. Cir. 2009) (citing *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) *en banc*).

The initial question under 28 U.S.C. § 1404(a) is whether the suit could have originally been brought in the proposed transferee venue. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If that question is answered in the affirmative, the Fifth Circuit then applies the "private" and "public" factors to determine *forum non conveniens. Nintendo*, 589 F.3d at 1197-98 citing *Volkswagen,* 545 F.3d at 314 n.9; *see also In re Acer America Corp.*, 626 F.3d 1252, 1254 (Fed. Cir. 2010). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law. *Id*.

IV.   ANALYSIS

    A.   **This Suit Could Have Originally Been Brought in the District of Connecticut**

None of the parties disputes that this suit involves the patent laws of the U.S. and, therefore, that all U.S. District Courts have original subject matter jurisdiction over this suit. 28 U.S.C. §§ 1331 and 1338(a).

Section 1404(a) requires that a transferee court have jurisdiction over the defendants in a transferred complaint. Neither party disputes that the District of

Connecticut has personal jurisdiction over Purdue. There is no requirement under Section 1404(a) that the transferee court have personal jurisdiction over the plaintiff. *Genentech*, 556 F.3d at p.12.

Accordingly, there should not be any dispute that this suit could have originally been brought in the District of Connecticut.

### B.     Each Private Interest Factor Favors Transfer to the District of Connecticut

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. Each favors transfer to Connecticut.

#### a.     A Suit Should Be Transferred to Where the Defendant's Documents Are Kept  - Here, Sources of Proof Are More Readily Accessible in Connecticut

Despite technological advances in document storage and production, physical accessibility to sources of proof continues to be an important private interest factor. *Volkswagen*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech,* 556 F.3d at 1345 quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp. 2d 325, 330 (E.D.N.Y. 2006) (internal quotation marks omitted).

Plaintiff already indicated the types of documents that it will seek in discovery when it asked for highly confidential documents confirming the exculpatory information Purdue provided in early settlement discussions. See Robinson Dec., ¶ 16, Exh. C. The

list is extensive (and is only the beginning of what will ultimately be requested) – "system architecture documents, information architecture documents, requirements documents created to define the operational characteristics of the processes, operating manuals created to describe how the process works and train employees in the use of the processes, maintenance manuals created to describe how to correct problems with the processes and/or insure that the processes continue to operate trouble free, quality control documents created to describe the operation of the processes and insure that quality goals are achieved, and regulatory compliance documentation that describes how the processes comply with state and federal laws and regulations regarding proper tracking." *Id.* None of these documents are located in Texas. Ramsey Dec., ¶ 6. Rather, they are either at Purdue's Connecticut, New Jersey, or North Carolina facilities. Ramsey Dec., ¶ 6.

Conversely, it is most likely that the only relevant documents that Plaintiff will produce will be the file history of the '812 patent, and that is located at the U.S. Patent and Trademark Office in Alexandria, Virginia. Undoubtedly, most of Purdue's future document requests will be answered simply by "no such documents exist," because Plaintiff has no real business.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech,* 556 F.3d at 1345 quoting *Neil Bros.,* 425 F.Supp. 2d at 330 (internal quotation marks omitted). That is precisely the situation here. Transferring this suit to Connecticut will avoid the significant and unnecessary burden to Purdue of transporting from Purdue headquarters in Connecticut or its nearby facilities in New Jersey to Texas, the numerous and voluminous documents

that Plaintiff obviously intends to request. See Robinson Dec., ¶ 9. It is also more convenient to transport Purdue's documents in North Carolina to Connecticut rather than to Texas, given the shorter distance between North Carolina and the former than North Carolina and the latter. *Id.* This private factor weighs heavily in favor of transfer.

### b. A Venue with Absolute Subpoena Power Is Favored - The District of Connecticut Has Subpoena Powers that the Northern District of Texas Does not in This Suit

A venue's ability to compel testimony through subpoena power is also an important factor in the § 1404(a) calculus. *In re Acer*, 626 F.3d at 1255. A venue that has "absolute subpoena power for both deposition and trial is favored over one that does not." *Volkswagen*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

Here, Purdue has identified numerous witnesses (particularly past and present employees) within the District of Connecticut or within 100 miles of the District of Connecticut who will inevitably be deposed, appear at trial, or become parties to this suit. See Ramsey Dec., ¶ 4.

The subpoena powers of the Northern District of Texas "will be of little use in this case" since none of these people are within the subpoena power of this District. *Acer*, 626 F.3d. at 1255. See Ramsey Dec., ¶ 4; Robinson Dec., ¶ 9. "By comparison, the subpoena powers of the [District of Connecticut] may be expected to be invaluable in the event process is required to hale relevant witnesses into court. *Id.* Just as in *Acer*, "[t]his factor surely tips in favor of transfer." *Id.* at 1256.

### c. A Suit Should Be Transferred When Most Witnesses Are Closer to Another Venue - The Cost of Attendance for Willing Witnesses Will Be Far Less in Connecticut

When most witnesses and evidence are closer to the transferee venue than to plaintiff's choice of venue and there are few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer. *Acer*, 626 F.3d at 1255 citing *Hoffmann,* 587 F.3d at 1336. The convenience and cost of attendance for witnesses is the single most important factor in the transfer calculus. *Genentech, 566 F.3d at 1342-43*. "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *TS Tech, 551 F.3d at 1320* (quoting *Volkswagen, 545 F.3d at 317*) (internal quotation marks omitted). Additionally, these witnesses will suffer the "personal costs associated with being away from work, family, and community." *Acer*, 626 F.3d at 1255 citing *Volkswagen, 545 F.3d at 317*. *Id*.

Because inconvenience for witnesses increases with distance from home, the Fifth Circuit established the "100-mile" guideline which requires that when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses directly increases with the additional distance to be traveled. *Volkswagen,* 545 F.3d at 317, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir 2008), *Nintendo*, 589 F.3d at 1198-99.

The inconvenience to, and the cost of attendance in the Northern District of Texas of, Purdue's willing witnesses will be significant. Transfer to the District of Connecticut will cut this cost drastically. The Purdue witnesses are located from about 1220 to 1588

miles form Dallas, Texas.  Robinson Dec., ¶ 9.  They are located in, or within about 535 miles of, the District of Connecticut.  *Id*.  Even the witnesses closest to Texas would need to travel over twice the distance to appear in Texas rather than in Connecticut (*i.e.,* 535 miles from North Carolina to Connecticut v. 1220 miles from North Carolina to Texas). *Id.*  The 100-mile rule clearly favors transfer to Connecticut.  Airfare, meals, and lodging expenses; losses of productivity from time spent away from work; and personal costs associated with being away from work, family, and community will be minimized or avoided for the vast majority of witnesses if this suit is transferred to Connecticut.  See *Acer*, 626 F.3d at 1255; *Nintendo*, 589 F.3d 1198-99.

> d. **Transfer to Connecticut Will make a Trial Easy, Expeditious, and Less Expensive**

A trial in Connecticut will be easier and less expensive than a trial in Texas for the same reasons as in Section IV.B.d., above.

> C. **The Balance of Public Factors Favors Transfer to the District of Connecticut**

Three of the public interest factors are neutral, here - (1) the administrative difficulties flowing from court congestion; (2) the familiarity of the forum with the law that will govern the case; and (3) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.  However, it is clear that the fourth and determinative public factor - the local interest in having localized interests decided at home – favors the requested transfer.

> a. **The Venue where the Alleged Infringement Occurred and where the Defendants Reside and Work Is Favored**

While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a

particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor. *Acer*, 626 F.3d at 1255 citing *Hoffmann, 587 F.3d at 1338*. The Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties. *Nintendo*, 589 F.3d at 1200 citing *TS Tech*, 551 F.3d at 1320.

However, the transferee venue has a significant and strong local interest in a case when the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community. *Hoffman*, 587 F.3d at 1336.

Here, the alleged direct and indirect infringement occurred in Connecticut, New Jersey, or North Carolina. Furthermore, the District of Connecticut has a significant and strong local interest in a case when the cause of action calls into question the work and reputation of numerous individuals residing in or near Connecticut and who conduct business in that community such as Prude's past and present employees. See *Hoffman*, 587 F.3d at 1336; Ramsey Dec., ¶ 4.

On the other hand, no infringement has occurred in Texas. Plaintiff has no real business or real offices in the Northern District of Texas. The address that Plaintiff gives as its principal place of business is its general attorneys' offices. Robinson Dec., ¶ 4.

## V. CONCLUSION

"[T]here is a stark contrast in relevance, convenience, and fairness between the" Northern District of Texas and the District in Connecticut. See *Hoffmann*, 587 F.3d at 1336. This contrast strongly favors transfer to Connecticut.

For the foregoing reasons, Purdue requests transfer of this suit to the District of Connecticut.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 21, 2014 | By: /John M. Cone/ |
|  | John M. Cone, PC<br>Hitchcock Evert LLP<br>750 North St. Paul Street<br>Suite 1110<br>Dallas, Texas  75201<br>+1-214-880-7002 (direct dial)<br>+1-214-953-1121 (facsimile)<br>jcone@hitchcockevert.com |
|  | *Attorneys for Defendants Purdue Pharma L.P. and Purdue Pharmaceuticals L.P.* |

Of Counsel:

Joseph R. Robinson
TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel.: (212) 704-6246
Fax: (212) 704-6288

### **CERTIFICATE OF CONFERENCE**

I certify that on the 21st day of January 2014, I conferred on the telephone with Christopher Joe, attorney of record for the Plaintiff.  Mr. Joe stated that Plaintiff opposed this Motion to Transfer.

/John M. Cone/

## **CERTIFICATE OF SERVICE**

      On January 21, 2014, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

                                      /John M. Cone/