**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| EIGHT ONE TWO, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 3:13-cv-02981-K |
| v. | § | |
| | § | Jury Trial Demanded |
| PURDUE PHARMA L.P. AND | § | |
| PURDUE PHARMACEUTICALS, L.P., | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFF EIGHT ONE TWO, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION UNDER 28 U.S.C. § 1404(a) FOR CHANGE OF VENUE**

---

**BUETHER JOE & CARPENTER, LLC**

Eric W. Buether
Christopher M. Joe
Brian A. Carpenter
Mark D. Perantie

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:    (214) 466-1279
Facsimile:    (214) 635-1830

**ATTORNEYS FOR PLAINTIFF
EIGHT ONE TWO, LLC**

## TABLE OF CONTENTS

I.      FACTUAL BACKGROUND ........................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

        A.      The Northern District of Texas is a Proper Venue for this Litigation ................... 2

        B.      Purdue Has Not Demonstrated that Connecticut is Clearly More
                Convenient ...................................................................................................... 3

                1.      Legal Standard ...................................................................................... 3

                2.      On Balance, the Private Interest Factors Do Not Favor Transfer .............. 5

                        a.      The location of witnesses and cost of trial in Connecticut
                                do not clearly favor transfer. .......................................................... 5

                        b.      The relative ease of access to sources of proof at best only
                                slightly favors transfer. ................................................................. 7

                        c.      Purdue's argument regarding the subpoena power of the
                                Northern District of Texas reflects an outdated
                                understanding of the law.  Under current law, both venues
                                have equivalent subpoena power. ................................................... 9

                        d.      Purdue makes no further argument for why transfer to
                                Connecticut will make trial of the case easy, expeditious,
                                and less expensive. ...................................................................... 10

                3.      On Balance, the Public Interest Factors Do Not Favor Transfer ............. 10

                        a.      This District's equal interest in this litigation makes the
                                public interest factor neutral. ....................................................... 10

                        b.      Administrative difficulties flowing from court congestion .......... 11

III.    CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

## Cases

*BNSF Ry. Co. v. OOCL (USA), Inc.*,
    667 F. Supp. 2d 703 (N.D. Tex. 2009) ......................................................................5, 10

*Gulf Oil v. Gilbert*,
    330 U.S. 501 (1947)..........................................................................................................3

*Hanby v. Shell Oil Co.*,
    144 F. Supp. 2d 673 (E.D. Tex. 2001) ..............................................................................3

*In re Affymetrix, Inc.*,
    Misc. No. 913, 2010 WL 1525010 (Fed. Cir. Apr. 13, 2010) ...........................................3

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................7

*In re Nat'l Presto Indus., Inc.*,
    347 F.3d 662 (7th Cir. 2003) .............................................................................................3

*In re Nintendo Co. Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)..........................................................................................7

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..........................................................................................5

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................................................4

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .....................................................................................3, 7, 9

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
    No. 2:10-cv-216, 2012 WL 462956 (E.D. Tex. Feb. 13, 2012)..........................................3

*Mohamed v. Mazda Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000)..................................................................................3

*Trintec Indus., Inc. v. Pedre Promotional Prods. Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005)....................................................................................2, 10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)...........................................................................................................3

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990)............................................................................2

*Virtualagility, Inc. v. Salesforce.com, Inc.*,
    2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014)...........................................9, 10

### <u>Statutes</u>

FED. R. CIV. P. 12.....................................................................................................................1

FED. R. CIV. P. 32....................................................................................................................10

FED. R. CIV. P. 45.....................................................................................................................9

28 U.S.C. § 1391.................................................................................................................2, 11

28 U.S.C. § 1400......................................................................................................................2

28 U.S.C. § 1404............................................................................................................1, 2, 3, 4

Pursuant to FED. R. CIV. P. 12(b)(3), Plaintiff Eight One Two, LLC ("Eight One Two") files this Response in Opposition to Defendants Purdue Pharma L.P. and **Purdue Pharmaceuticals L.P.'s** (collectively referred to as "Purdue" or "Defendants") Motion Under 28 U.S.C. § 1404(a) for Change of Venue (the "Motion"), Dkt. No. 15.

## I.   FACTUAL BACKGROUND

**A.   The Parties.**   Plaintiff Eight One Two is a Texas corporation with its headquarters and principal place of business located in Westlake, Texas.  *See* Ex. A, Declaration of Peter Martin at ¶ 4 (filed contemporaneously with this response).   Eight One Two's headquarters has been located in Westlake, Texas since April of 2012.  *Id*.  Eight One Two is the owner by assignment of all rights, title, and interest in U.S. Pat. No. 6,697,812 (the "`812 Patent") at issue in this case.  Ex. A, Martin Declaration at ¶ 6.  The inventor of the `812 Patent, Mr. Martin, is the sole shareholder of Eight One Two, LLC, and created the company for the purpose of holding his intellectual property assets and managing the licensing of the `812 Patent.  Ex. A, Martin Declaration at ¶ 2 and 3.   Mr. Martin resides at 2967 Cripple Creek Trail, Grapevine, TX 76051, in this district.  Ex. A, Martin Declaration at ¶ 5.

The Defendant Purdue Pharma L.P. is a pharmaceutical company headquartered in Connecticut.  Purdue's Motion for Change of Venue at pg. 2 (Dkt. No. 15).  Defendant Purdue Pharmaceuticals L.P. has a pharmaceutical manufacturing facility in Wilson, North Carolina.  *Id*.

**B.   Eight One Two's Patent Infringement Allegations.**   Eight One Two is the owner by assignment of all rights, title, and interest in U.S. Pat. No. 6,697,812 (the "`812 Patent"), entitled "Method and System for Eliminating Error when Packing or Packaging Sets of Serialized Products or Otherwise Identifiable Products."  Ex. A, Martin Declaration at ¶ 4.  Eight One Two alleges that Purdue "has been and now is directly and/or indirectly infringing one or more claims of the `812 Patent by (1) making, importing, using, offering for sale, and/or selling

the patented inventions, (2) by actively inducing others to use the patented inventions, or (3) by contributing to the use of the patented inventions in the United States." Eight One Two's First Amended Complaint at ¶ 12 (Dkt. No. 13). In particular, Eight One Two alleges that "Purdue uses and/or induces or contributes to others', including its affiliates' and distributors', use of an item level tagging and packaging systems that eliminates errors in the packing and shipment of serialized products." First Amended Complaint at ¶ 15.

## II.      ARGUMENT

### A.      The Northern District of Texas is a Proper Venue for this Litigation

As a threshold matter, venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) (holding that 28 U.S.C. §§ 1400 and 1391(c) must be read together such that in patent litigation "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"); *see also Trintec Indus., Inc. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("quickly dispatch[ing]" defendant's motion to dismiss for improper venue because "the venue point is a non-issue"). In patent litigation "the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee." *Trintec*, 395 F.3d at 1280.

Because this Court has personal jurisdiction over Purdue, and because Purdue asserts only that the District of Connecticut is a more convenient forum pursuant to 28 U.S.C. § 1404(a), the only issue is whether the private and public interest factors under § 1404(a) analysis clearly weigh in favor of a transfer. As demonstrated below, they do not.

**B.**     **Purdue Has Not Demonstrated that Connecticut is Clearly More Convenient**

    **1.**     **Legal Standard**

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case.  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*").   The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants.  *Volkswagen II,* 545 F.3d at 315; *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947).  *See also In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. Apr. 13, 2010) (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."))   Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is *clearly* more convenient.  *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

2.      **On Balance, the Private Interest Factors Do Not Favor Transfer**

      a.      **The location of witnesses and cost of trial in Connecticut do not clearly favor transfer.**

In examining the cost of attendance for willing witnesses, all parties and witnesses must be considered. *Id.* at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). Additionally, the convenience of non-party witnesses is given greater weight than that of party witnesses. *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

The Plaintiff's principal witness – the patent owner/inventor Peter Martin -- resides in this district. Ex. A, Martin Declaration at ¶ 5. Mr. Martin would have negligible travel costs if the case remains in this district.

In contrast, transferring the case to Connecticut could impose substantial travel costs on Mr. Martin, and he would be significantly inconvenienced. Initially, Mr. Martin's only visit to Connecticut was more than twenty four years ago, which coincidentally means that Connecticut does not possess personal jurisdiction over Mr. Martin. Ex. A, Martin Declaration at ¶ 8.

The closest Federal Court to Purdue's Stamford, Connecticut, location is in Bridgeport. A typical trip from Dallas to Bridgeport would require flying from Dallas to LaGuardia Airport in New York, renting a car, and then driving 54 miles to Bridgeport. A search of fares this week shows that costs associated with such a trip would be around $1,994 for the round trip refundable

airfare on American Airlines plus $80 per day for a compact rental car.  *See* Ex. B and C. Consequently, the Mr. Martin's travel expenses would be significantly increased if the case were to be transferred to Connecticut, and requiring Mr. Martin to pay for his own travel to Connecticut would impose an extreme burden on him.  Ex. A, Martin Declaration at ¶ 8.

The cost of travel from Connecticut to Dallas is similar to the cost of travel from Dallas to Connecticut.  The costs for a trip from Bridgeport to Dallas would be virtually identical to the costs of traveling from Dallas to Stamford.  *See* Ex. B, C, D and E.  The cost of transporting a witness to trial from Wilson, North Carolina, to Dallas is substantially the same as the cost of transporting a witness from North Carolina to Connecticut.  A sample flight from Raleigh-Durham to Dallas on American Airlines is $1,468.   *See* Ex. F.  A sample flight from Raleigh-Durham to New York on American Airlines is $1,122.  *See* Ex. G.

A comparison of the size of each of the parties further illustrates the comparative burdens.  Mr. Martin's income in 2013 was approximately $33,000.  Ex. A, Martin Declaration at ¶ 9.  A $2,074 trip to Connecticut represents approximately 6.3% of his annual revenue. Purdue is privately held and does not publicly report its revenues.   However, Purdue manufactures the drug OxyContin (among a large portfolio of other drugs) which by itself resulted in revenues of $3.1 billion in 2010.  *See* Ex. J.  If that $3.1 billion figure is used as a simple proxy for Purdue's revenues, a $2,081 trip from Connecticut to Texas would be 0.000067% of Purdue's annual revenue (which is understated given that Purdue sells other drugs as well).  Put another way, Purdue would have to make at least 93,939 trips for the burden of travelling to Dallas to be as costly to Purdue as a single trip to Connecticut is for Peter Martin.

Purdue suggests that because a number of employees have designed and used the accused inventory management system, Purdue will need to call numerous witnesses from Connecticut

for trial.  *See* Purdue's Motion for Change of Venue at pg. 2 (Dkt. No. 15) and Ramsey Declaration ¶ 4.  Tellingly, Purdue offers no reason <u>why</u> all or even any of these potential witnesses will have to testify live at trial.  As the Court is aware, in patent litigation parties typically utilze their technical expert witnesses explain the relevant operation of the accused instrumentalities at trial to the jury.

To the extent any of Purdue's potential witnesses need to be deposed, those depositions can occur – and typically do occur -- at the witness's location regardless of whether the case is transferred.  The cost of any such deposition will be the same regardless of the venue.

Because Purdue has not shown that the costs and locations of the witnesses *clearly* make Connecticut more convenient than the Northern District of Texas, this factor does not militate in favor of transfer.

> **b.    The relative ease of access to sources of proof at best only slightly favors transfer.**

The court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues.  *See Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009).  Although technological advances have significantly lightened the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis.  *Volkswagen II*, 545 F.3d at 316.  Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue.  *See id.* at 316.  This factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.  *See, e.g.*, *id.* at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Although Purdue maintains an office in the proposed transferee forum, Purdue has not submitted any evidence that any appreciable number of relevant documents are actually located in the forum office alone.  Purdue has offered no evidence that the cost of shipping documents will be significantly less if the case is transferred from Dallas to Connecticut.

On the other hand, transferring the case from Dallas to Connecticut raises the cost of bringing trial exhibit documents to trial for Eight One Two, since Eight One Two will have to ship its exhibits rather than hand-carry them.  All of Eight One Two's documents and things related to this case are located in the Northern District of Texas.  Ex. A, Martin Declaration at ¶ 7.  All of the work product Mr. Martin generated when he conceived of the inventions disclosed in the `812 Patent are located at his residence in the Northern District of Texas.  Ex. A, Martin Declaration at ¶ 10.Purdue suggests without any evidentiary support that transferring the case will lessen the cost of bringing its documents from North Carolina to trial.  As an initial matter, the typical method of document production in patent cases is via electronic production – either TIFF images or PDFs.  Purdue has retained local counsel, and it would be surprising if Purdue would not be able to print its trial exhibits through its local counsel in Dallas, thus eliminating any imaginary shipping expense.  Printing its exhibits in Dallas would moot any discussion of shipping costs.

But assuming that Purdue actually needed to ship (rather than print) its trial exhibits, a review of shipping rates at UPS suggests that this difference in shipping costs is insubstantial.  The cost of shipping a twenty pound package from Wilson, NC, to Dallas via UPS is $26.40.  *See* Ex. H.  The cost of shipping a twenty pound package from Wilson, NC, to Bridgeport via UPS is $18.59.  *See* Ex. I.

Regardless of the outcome of this transfer motion, the cost of producing documents during discovery will be the same – Purdue will produce electronic copies which will be shipped to and/or downloaded by Eight One Two's attorneys in Dallas and Eight One Two will produce electronic copies to Purdue's attorneys.

Purdue has not provided *clear* evidence that transferring the case to Connecticut will result in more convenient access to proof.

> **c.     Purdue's argument regarding the subpoena power of the Northern District of Texas reflects an outdated understanding of the law.   Under current law, both venues have equivalent subpoena power.**

Purdue's arguments regarding the relative subpoena power of the District of Connecticut as compared to the Northern District of Texas do not reflect the significant changes to Federal Rule of Civil Procedure 45 which took effect on December 1, 2013.  Relevant to this factor, FED. R. CIV. P. 45 was changed to specify that the Court where an action is pending is the Court that issues subpoenas for that action and that subpoenas can now be served nationwide.   Judge Gilstrap, in the Eastern District of Texas, recently explained the significance of these changes relative to this exact point of law:

> Rule 45, however, has since been amended in 2013.  In particular, while the old Rule 45(a)(2) provided that a court may issue a deposition subpoena only if the deposition is to be taken in the district where the court resides, the amended Rule 45(a)(2) makes it clear that the presiding court may issue nationwide deposition subpoenas so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business.   Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A); *see* Committee Notes on Rules — 2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance.").   Under the current Rule 45, regardless of the venue in which a case is originally filed, parties may now secure the attendance of any non-party witnesses, at least in the form of taking the witnesses' deposition.  This recent amendment to Rule 45 has direct application to the Fifth Circuit's earlier concern expressed in *In re Volkswagen II* about a non-party witness being inconvenienced for having to travel more than 100 miles to attend trial.  The proffering party now has the option to depose the

> non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial. *See* Fed. R. Civ. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds ... that the witness is more than 100 miles from the place of hearing or trial...").

*Virtualagility, Inc. v. Salesforce.com, Inc.*, 2014 U.S. Dist. LEXIS 12015, *14-15 (E.D. Tex. Jan. 31, 2014).

The Northern District of Texas has the same power to compel deposition testimony as the District of Connecticut, and this factor does not provide a compelling reason to transfer the case to Connecticut.  Also of note, this factor applies to the securing of testimony of unwilling witnesses and Purdue has identified no such witness.  *See BNSF Ry. Co.,* 667 F. Supp. 2d at 711 (noting that this factor is neutral where no unwilling witnesses were identified).

Purdue has not produced *clear* evidence that transferring the case to Connecticut will result in greater access to compulsory process.

> **d.    Purdue makes no further argument for why transfer to Connecticut will make trial of the case easy, expeditious, and less expensive.**

For this factor, Purdue points to the arguments addressed previously.  Because those arguments do not provide *clear* evidence that Connecticut is a better venue, this factor also does not weigh in favor of a transfer.

> **3.    On Balance, the Public Interest Factors Do Not Favor Transfer**

> **a.    This District's equal interest in this litigation makes the public interest factor neutral.**

In patent litigation, the injury occurs at the place where "the infringing activity directly impacts on the interests of the patentee." *Trintec*, 395 F.3d at 1280.  Purdue has conducted infringing activities in the Northern District of Texas through its sale of infringing goods in this

District, and the residents of this District have an interest in determining the outcome in this litigation.  *See id.*

Purdue asserts that Connecticut has a greater interest because some of the direct and indirect infringement may have occurred there or in New Jersey or North Carolina.  By this logic, only citizens of a corporation's home residence should ever determine whether that corporation's tortious acts conducted elsewhere create liability.  This argument ignores all applicable venue rules and caselaw.  *See, e.g.*, 28 U.S.C. § 1391(a), (b), (e), (f), and (g) (venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

### b.    Administrative difficulties flowing from court congestion

USCOURT.GOV reports that the median time interval in the District of Connecticut from filing to disposition is 32.2 months. *See* Ex. K.  On the other hand, the average time from filing to trial in the Northern District of Texas is 20.2 months.  *Id.*  These statistics indicate that the District of Connecticut is significantly more congested than the Northern District of Texas. Consequently, this factor favors denying Purdue's motion to transfer venue.

### III.    CONCLUSION

For the reasons stated above, Purdue has not shown that Connecticut is <u>clearly</u> a more convenient venue than the Northern District of Texas.  Consequently, the Court should ***deny*** Purdue's motion to transfer.

Dated:  February 14, 2014          Respectfully submitted,

**BUETHER JOE & CARPENTER, LLC**

By:       */s/ Mark D. Perantie*
          Christopher M. Joe
          State Bar No. 00787770
          Chris.Joe@BJCIPLaw.com
          Eric W. Buether
          State Bar No. 03316880
          Eric.Buether@BJCIPLaw.com
          Brian A. Carpenter
          State Bar No. 03840600
          Brian.Carpenter@BJCIPLaw.com
          Mark.Perantie@BJCIPLaw.com
          Niky Bukovcan
          State Bar No. 24078287

          1700 Pacific Avenue
          Suite 4750
          Dallas, Texas 75201
          Telephone:    (214) 466-1279
          Facsimile:    (214) 635-1830

          **ATTORNEYS FOR PLAINTIFF**
          **EIGHT ONE TWO, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 14th day of February, 2014.  Any other counsel of record will be served by facsimile transmission.


*/s/ Mark D. Perantie*
Mark D. Perantie